(C. D. 495)

Hoyt, Shepston & Sciaroni *v.* United States

United States Customs Court, Second Division

(Decided May 15, 1941)

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for the plaintiffs.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at the port of San Francisco, brought to recover certain customs duties alleged to have been improperly exacted on a particular

importation described in the invoice as printing and embossing cylinders. Duty was levied thereon at the rate of 60 per centum ad valorem under paragraph 395 of the Tariff Act of 1930 which reads as follows:

PAR. 395. Print rollers, of whatever material composed, with raised patterns of brass or brass and felt, finished or unfinished, used for printing, stamping, or cutting designs, $5 each and 72 per centum ad valorem; embossing rollers of steel or other metal, 30 per centum ad valorem; print blocks, and print rollers not specially provided for, of whatever material composed, used for printing, stamping, or cutting designs, 60 per centum ad valorem: *Provided*, That the foregoing rates shall apply whether or not the articles are imported separately, or as parts of machines.

It is claimed that said articles are properly dutiable at but 25 per centum ad valorem under paragraph 372 of said act as parts of printing machinery.

The plaintiffs offered in evidence the testimony of a single witness, John T. Raisin, president of the J. T. Raisin Corporation, the ultimate consignee and actual importer herein, who testified in part as follows:

Q. Will you examine the invoice and state if you are familiar with the merchandise invoiced as cylinder for mounting paper counter-pressure surfaces, valued at 848 marks; also an embossing cylinder valued at 128 marks. ' *   *   *—A. I am.

*          *          *          *          *          *          *

Q. Would you describe these two items I read to you?—A. These are steel rollers to which are attached embossing dies.

Q. Upon what type of machine is it, if any?—A. On a rotary printing press.

Q. How is it attached to it, will you state?—A. We use a curved brass die, which is attached by screws to the curved cylinder.

Q. Now, will you describe more fully how the machine to which these are attached operates; what it does?—A. This machine prints three colors and embosses, all in the one operation.

*          *          *          *          *          *          *

Q. What do you need to print with those things, if anything?—A. If you want to print you have to attach a printing plate, or if you want to emboss, you attach an embossing die. The rollers do not do anything.

Q. Can that machine operate without the rollers?—A. No, sir.

Q. You state that this machine was all metal?—A. Yes, sir.

Q. Was it composed of any other material?—A. No, sir.

On cross-examination the witness testified in part as follows:

X Q. Do you know the difference between a print roller and an embossing roller?—A. These won't print.

Judge DALLINGER. You have to put something else on them?

The WITNESS. You have to put something else on them.

*          *          *          *          *          *          *

By Mr. WEIL.

X Q. No printing roller will print unless it is attached to a machine, will it? Take the print roller itself, it won't print?—A. It will if it has a design made on it. These are all smooth rollers that we put the embossing plate on. You can have a roller with the engraving on it.

Judge DALLINGER. You say that these did not have anything on them?

The WITNESS. No, sir.

By Mr. WEIL.

X Q. Did you ever see a print roller with a design on it?—A. Yes, sir.

X Q. Is it a print roller?—A. It will print. I have seen them.

X Q. Do you know the difference between a print roller and an embossing roller?—A. These are not either.

\*        \*        \*        \*        \*        \*        \*

X Q. What is the difference?—A. An embossing roller is made with heavier bearings. In printing you use a very light impression.

\*        \*        \*        \*        \*        \*        \*

Judge DALLINGER. These particular rollers in this case, were they made particularly for this printing machine?

The WITNESS. Yes, sir. ·

\*        \*        \*        \*        \*        \*        \*

Judge DALLINGER. Do they have any other use except as parts of those machines, that you know of?

The WITNESS. No, sir, they have not.

\*        \*        \*        \*        \*        \*        \*

By Mr. WEIL.

X Q. Are these attached to the machines all the time while the machines are functioning?—A. No, sir.

\*        \*        \*        \*        \*        \*        \*

X Q. Now, the way the invoice reads, it is a cylinder for mounting paper counter-pressure surfaces; the way that is described there that is embossing, isn't it?—A. Yes, sir.

X Q. Now, the next description I read to you, and above that appears "Embossing attachment." Right?—A. Yes, sir.

X Q. Then the next thing is "Embossing cylinder."—A. Yes, sir.

\*        \*        \*        \*        \*        \*        \*

X·Q. That is also used for embossing, isn't it?—A. Yes, sir.

X Q. So that these two items are invoiced as embossing attachments, and they are used for embossing; is that right?—A. When you put the embossing plates on.

X·Q. They are used for embossing?—A. They don't emboss without plates, though.

In the case of *United States* v. *Sussex Print Works*, 17 C. C. P. A· 257, T. D. 43686, certain plain copper rollers with no engraving thereon were held to be properly dutiable at the rate of 35 per centum ad valorem under paragraph 372 of the Tariff Act of 1922 as parts of textile machinery not specially provided for, rather than at the rate of 60 per centum ad valorem under the provision in paragraph 396 of said act for print rollers. In its decision the appellate court said:

In our view of the case the rule of *ejusdem generis*, regardless of its general applicability to terms of that character, does not control here, and finished print rollers for the printing of figures on silk are provided for in the paragraph and we so hold.

Attention is again called to the fact that there is no provision in paragraph 396 for the unfinished roller or for parts, finished or unfinished. This would seem to be in entire harmony with the theory that Congress was carrying out the wishes of the Print Cutters' Association and that it did not concern itself with the unfinished print roller which had no engraving process applied to it and omitted any provision for it in the paragraph.

From a reading of paragraph 395 of the Tariff Act of 1930 it will be observed that the words "finished or unfinished" only apply to print

rollers with raised patterns of brass or brass and felt used for printing, stamping or cutting designs, the duty imposed thereon being $5 each and 72 per centum ad valorem. According to the uncontradicted evidence the rollers constituting the imported merchandise at bar in their imported condition were incapable of either printing or embossing, neither of which operations could be effected until either a printing plate or an embossing die was attached to the said rollers. Hence, the case of *United States* v. *Sussex Print Works, supra,* is certainly applicable and in our opinion here controlling.

Furthermore, according to the uncontradicted evidence the rollers in question are composed in chief value of metal and are necessary and indispensable parts of printing machinery. We therefore hold them to be properly dutiable as such at the rate of 25 per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as alleged by the plaintiffs. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.